# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 3478 | **DATE** | 7/20/2006 |
| **CASE TITLE** | Frank J. Crosby vs. Bowater Inc. Retirement Plan for Salaried Employees of Great N. Paper, Inc. et al | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, the parties are respectfully invited, if they choose, to file briefs addressing the propriety *vel non* of the transfer of venue of this case, pursuant to 28 U.S.C. § 1404(a), to the Western District of Michigan. The parties, if they confer and conclude that transfer to the Western District of Michigan is appropriate, also may inform the Court that transfer is warranted by telephone through the Courtroom Deputy. Any opening briefs should be filed by August 11, 2006, and any responsive briefs should be filed by August 25, 2006.

*/s/ Mark Filip*

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

This case is, under any view of things, substantially related to and/or intertwined with a prior case that was hotly litigated in the Western District of Michigan and the United States Court of Appeals for the Sixth Circuit. *See Crosby v. Bowater, Inc. Retirement Plan for Salaried Employees of Great N. Paper, Inc.*, 212 F.R.D. 350, 360-62 (W.D. Mich. 2002), *rev'd by Crosby v. Bowater Inc. Retirement Plan for Salaried Employees of Great N. Paper, Inc.*, 382 F.3d 587, 597 (6th Cir. 2004). The instant suit (like the former) relates to a putative ERISA violation allegedly committed by Defendants in relation to a retirement plan, the Bowater Incorporated Retirement Plan for Salaried Employees of Great Northern Paper, Inc. More specifically, in October 2001, the same Plaintiff, Mr. Frank Crosby, sued the Defendants in this case (the Plan and Bowater, Inc.) alleging similar problems concerning the Plan, which were alleged to be violative of ERISA § 502(a)(3). The District Court for the Western District of Michigan found that the Defendants had violated ERISA § 502(a)(3) and entered judgment in Plaintiff's (and a related class's) favor. *See Crosby*, 212 F.R.D. at 360-62. The Sixth Circuit subsequently reversed, and held that the Plaintiff failed to state a cognizable ERISA violation as the case was framed; thereafter, and perhaps anomalously, the Sixth Circuit directed that the case should be dismissed "for lack of subject matter jurisdiction." *Crosby*, 382 F.3d at 597; *see also id.* ("[W]e do not believe that Mr. Crosby ever had a justiciable claim under ERISA § 502(a)(3), the particular statutory provision on which he had elected to sue. Our caselaw teaches—perhaps surprisingly—that federal subject matter jurisdiction is lacking in such a situation."). In the case *sub judice*, Defendants assert that this dismissal for lack of subject matter jurisdiction by the Sixth Circuit, in response to a failure to state a cognizable claim that was not also facially frivolous, was inconsistent with prior Supreme Court precedent and subsequent Sixth Circuit precedent. See D.E. 16 at 1-2 (citing *Primax Recoveries, Inc. v. Gunter, et al.*, 433 F.3d 515, 517 (6th Cir. 2006) (holding that "a federal court has subject-matter

**STATEMENT**

jurisdiction, even if the plaintiff is unable to state a claim upon which relief can be granted," when improperly seeking solely legal relief under ERISA § 502(a)(3)).

In the instant case, the same Plaintiff sues the same Defendants concerning the same Plan. In the instant case, Plaintiff seeks to invoke ERISA § 502(a)(1)(B), a provision of ERISA that Plaintiff appears to have expressly disclaimed in the Michigan litigation. The Defendants have moved to dismiss the instant case on grounds of *res judicata* and judicial estoppel, as summarized further below. Both of these defenses (and the Plaintiff's objections thereto) appear to be fundamentally related to and grounded in the Michigan litigation.

Caselaw reflects that a district court may appropriately raise *sua sponte* the subject of a transfer of venue pursuant to 28 U.S.C. § 1404(a). *See*, *e.g.*, *Ward v. Delaney*, No. 01 C 3074, 2002 WL 31133099, *2 (N.D. Ill. Sept. 20, 2002) ("a district court may *sua sponte* transfer a case under § 1404") (citing *Carver v. Knox County*, 887 F.2d 1287, 1291 (6th Cir.1989); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1352, at 272 (2d ed.1990)). Before doing so, the District Court typically should alert the parties to the issue. That is the purpose of this order.

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." To properly transfer a case under Section 1404(a), three factors must be met: (1) venue must be proper in this district, (2) venue must be proper in the transferee district, and (3) an analysis of all the circumstances in the case must show that a transfer would serve the interest of justice and/or the convenience of the witnesses and parties. *Bryant v. ITT Corp.*, 48 F. Supp. 2d 829, 832 (N.D.Ill.1999) (Alesia, J.). In determining whether one forum is more appropriate than the other, the court must consider the private interests of the parties as well as the public interest of the judicial system. *North Shore Gas Co. v. Salomon, Inc.*, 896 F. Supp. 786, 791 (N.D.Ill.1995) (Gettleman, J.). The factors relevant to the private interests of the parties include: (1) the plaintiff's choice of forum, (2) the situs of material events, (3) the convenience of the parties, and (4) the convenience of the witnesses. *College Craft Cos., Ltd. v. Perry*, 889 F.Supp. 1052, 1054 (N.D.Ill.1995). The factors relevant to the public interest of the judicial system include, among other things, the court's familiarity with the applicable law and concerns relating to the efficient and orderly administration of justice. *Id.* at 1056. The weighing of factors for and against transfer is committed to the sound discretion of the trial court. *See*, *e.g.*, *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir.1986).

In the instant case, it would seem that the ordinary factors affecting the Section 1404(a) analysis would point towards the Western District of Michigan. There appears to be little material connection, if any, between the litigation and the Northern District of Illinois. None of the parties resides here, or has its corporate headquarters here, and there is no suggestion that there are any material witnesses or documents in the Northern District of Illinois. None of the operative events appears to have occurred here. While venue does not appear to be so defective as to fail to even exist (in which case the analysis would need to proceed under 28 U.S.C. § 1406), there appears to be little, if any, meaningful link between this case and the Northern District of Illinois.

In addition, and perhaps even more importantly, the interests of justice seem to favor a transfer to the Western District of Michigan and the reviewing authority of the Sixth Circuit. It is not necessary to detail all of Defendants' arguments in support of their motion to dismiss, but in summary, Defendants' arguments concerning *res judicata* and judicial estoppel all seem to fundamentally relate to the effect and undertaking of the litigation in the Western District of Michigan and Sixth Circuit. Of course, not every case involving a *res*

**STATEMENT**

*judicata* issue is typically seen as a candidate for a Section 1404 transfer to the rendering forum (*i.e.*, the forum that rendered the initial decision(s)); however, this case is not a typical one. Defendants and Plaintiffs, in the context of the *res judicata* issue, fundamentally clash about the import of the Sixth Circuit's judgment in the first *Crosby* case, as well as about the import of subsequent Sixth Circuit caselaw that seems to have shifted the Sixth Circuit's analysis of whether, in a case like the first *Crosby* case, the dismissal should simply be an orthodox dismissal for a failure to state a claim, as opposed to a dismissal for lack of jurisdiction for failure to state a cognizable claim. One might fairly argue that a district court inside the Sixth Circuit should make the assessment of the impact of the Sixth Circuit's prior decision in *Crosby*—not simply because a district court in the Sixth Circuit might be better positioned to accurately assess the Sixth Circuit's caselaw, but also, and more importantly, because whatever district court assessment is made, that assessment from within the Sixth Circuit will be readily subject to review by the Sixth Circuit itself, the Court whose judgment is at issue. (Indeed, transfer to the Western District of Michigan might facilitate and prompt a petition for interlocutory review under 28 U.S.C. 1292(b), so the Sixth Circuit would have an opportunity to speak to its own judgment and the impact of Sixth Circuit caselaw in this area.)

In addition, the parties are at substantial loggerheads about issues concerning the appropriateness of judicial estoppel. Important issues in this context—such as the amount of judicial resources expended in the Michigan litigation, the relative burdens imposed on the parties by the Michigan litigation, and any tactical advantages/benefits that accrued to the Plaintiff as a result of arguments and concessions made in the Michigan litigation—all would seem to be more fairly and accurately resolved by the Michigan courts that presided over that first case.

Finally, the Court notes that while a plaintiff's choice of forum is entitled to some weight in a venue-transfer context, it would seem unlikely that Plaintiff could claim that the Western District of Michigan is an unfair or inappropriate forum. Plaintiff chose to file this case there initially, and Plaintiff counsel also is located in Michigan. Again, there appear to be few, if any, witnesses here, and none of the operative events appears to have occurred here.

As a result, the Court requests the parties to address the appropriateness of transfer to the Western District of Michigan. If the parties do not speak to the contrary, the Court will assume that the parties concede that this case more appropriately should proceed in the Western District of Michigan. If the parties do wish to file any briefs, any opening briefs should be filed by August 11, 2006, and any responsive briefs should be filed by August 25, 2006. If the parties confer and conclude that transfer to the Western District of Michigan is appropriate, they also may inform the Court that transfer is warranted by telephone through the Courtroom Deputy.

Because the propriety of transfer needs to be resolved before the motion to dismiss is resolved, the Defendants' motion to dismiss (D.E. 11) is stricken without prejudice to being reinstated (with the previously tendered briefs of both sides) in the event the case is not transferred to the Western District of Michigan.