IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANK J. CROSBY, individually and on behalf of others similarly situated, </br></br>  Plaintiff, </br></br> v. </br></br> BOWATER INCORPORATED RETIREMENT PLAN FOR EMPLOYEES OF GREAT NORTHERN PAPER, INC., AND BOWATER, INC., </br></br> Defendants. | No. 05 C 3478 </br></br> Judge Mark Filip |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Frank J. Crosby ("Plaintiff" or "Crosby"), on behalf of himself and others similarly situated, has sued Bowater Incorporated Retirement Plan for Salaried Employees of Great Northern Paper, Inc. (the "Plan") and Bowater, Inc. ("Bowater," collectively "Defendants"). Plaintiff filed a complaint (D.E.1)[1] that invokes Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) ("ERISA § 502(a)(1)(B)"). In it, Plaintiff alleges that Defendants incorrectly applied a "pre-retirement mortality discount" when he elected to receive a lump sum pre-retirement benefit from the Plan. (D.E. 1 ¶ 12.) Defendants have moved under Fed. R. Civ. P. 12(b)(6) to dismiss the complaint on the basis of *res judicata* and judicial estoppel, or, in the alternative, to dismiss Bowater as an improper defendant. (D.E. 11.) For the following reasons, the Court respectfully denies Defendants' motion.

---

[1] "D.E." refers to the docket entry of the cited document, followed by the appropriate page or paragraph number.

## RELEVANT BACKGROUND FACTS

In October 2001, Crosby sued Defendants, the Plan and Bowater, under ERISA.[2] (D.E. 12 at 1; D.E. 14 at 1; D.E. 12, Ex. A.) Plaintiff brought that case in the United States District Court for the Western District of Michigan, Southern Division, and the case bore number 1:01C0683 (the "Prior Suit"). (D.E. 12, Ex. A at 1.) The primary difference between the Prior Suit and the case at bar, according to the Parties, is that the 2001 suit sought recovery under ERISA § 502(a)(3) and this suit seeks relief under ERISA § 502(a)(1)(B). (D.E. 11 ¶ 4; D.E. 14 at 6; *compare* D.E. 12, Ex A ¶ 72 *with* D.E. 1 ¶ 99.) Plaintiff alleged in the Prior Suit that Bowater's "use of a mortality discount for the period <u>before</u> normal retirement age caused a partial forfeiture of Crosby's accrued benefit, thereby violating ERISA §201(a), 29 U.S.C.A. §1053(a)." (D.E. 12, Ex. A ¶ 96 (emphasis in original). Similarly, here, Crosby alleges that his claim "concerns defendants' use of a 'pre-retirement mortality discount . . . .'" (D.E. 1 ¶ 12.)

Defendants argue, and Crosby does not disagree, that Crosby chose not to seek relief in the Prior Suit under ERISA § 502(a)(1)(B), the avenue he seeks to pursue here. (D.E. 11 ¶ 1; D.E. 14 at 10). In this regard, Defendants cite numerous instances in which Plaintiff argued in his Prior Suit that he "could not bring his claim under ERISA §502(a)(1)(B)" and made similar other arguments disclaiming his right to recover under ERISA §502(a)(1)(B). (D.E. 12 at 4-5; *id.*, Ex. B at 24; *id.*, Ex. D at 61; *id*, Ex. E at 5-6 ("none of the remedies under §502(a)(1)(B) applies to Crosby's claim"); *id.*, Ex. F at 9, n.14 ("Crosby did not, <u>and could not</u>, bring his claim under §502(a)(1)(B)") (emphasis in original).) Plaintiff similarly cites instances in which he claims Defendants argued in the

---

[2] Plaintiff claims to have initiated the action in 2002 (D.E. 14 at 1), while Defendants contend the suit was filed in 2001. (D.E. 12 at 1.) The complaint that all parties reference as the prior suit is stamped October 22, 2001. (D.E. 12, Ex. A at 1.)

Prior Suit that "Crosby could not recover under ERISA §502(a)(3) because his claim arose under ERISA §502(a)(1)(B)." (D.E. 14 at 11-12) (citing *id.*, Ex. 18 at 12, n.8; *id.*, Ex. 19 at 14, 16, 18; *id.*, Ex. 20 at 48, 51; *id.*, Ex. 21 at 18, 19; *id.*, Ex. 22 at 11, 14.)

Initially, Crosby was successful in his Prior Suit, as the Michigan district court rendered summary judgment in Crosby's favor, holding that Defendants had incorrectly applied the pre-retirement mortality discount when Plan beneficiaries chose to receive lump sum early retirement benefits. *See Crosby v. Bowater Inc. Retirement Plan for Salaried Employees of Great N. Paper, Inc.*, 212 F.R.D. 350, 360–362 (W.D. Mich. 2002). The Michigan district court also granted Crosby's motion for class certification and ordered Defendants to "recalculate lump sums claims paid in the past and to repay underpaid benefits with pre-judgment interest as individually calculated for past retirees whose lump sum benefits were incorrectly calculated." *Id.* at. 364.

Crosby's win, however, was short-lived. Defendants appealed the district court's decision to the United States Court of Appeals for the Sixth Circuit, which vacated the lower court judgment and instructed the district court to "DISMISS Mr. Crosby's complaint for lack of subject matter jurisdiction." *Crosby v. Bowater Inc. Retirement Plan for Salaried Employees of Great N. Paper, Inc.*, 382 F.3d 587, 597 (6th Cir. 2004). The Sixth Circuit explained its decision in stating: "we do not believe that Mr. Crosby ever had a justiciable claim under ERISA § 502(a)(3), the particular statutory provision on which he had elected to sue. Our caselaw teaches–perhaps surprisingly– that federal subject matter jurisdiction is lacking in such a situation." *Id.* (collecting Sixth Circuit precedent).

## LEGAL STANDARDS

A court should only dismiss a plaintiff's complaint under Rule 12(b)(6) if there is no set of facts under which the court may grant the plaintiff relief. *See, e.g., Northwest Tissue Ctr. v. Shalala*, 1 F.3d 522, 527 (7th Cir. 1993) (citing *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991)). In reviewing a Rule 12(b)(6) motion, the court must accept the plaintiff's allegations as true and make all reasonable inferences in the plaintiff's favor. *See, e.g., id.* A district court may consider matters of public record without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (collecting cases); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991) (per curiam) (teaching that, in analyzing motion to dismiss, "[t]he district court may also take judicial notice of matters of public record.") (collecting authorities). In addition, for the purposes of a Rule 12(b)(6) motion to dismiss, a court can consider documents "referred to in the plaintiff's complaint" and "central to his claim." *Wright v. Assoc. Ins. Co., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (citation omitted).

## ANALYSIS

I. The Parties Mutually Oppose Any Transfer of This Case to The Western District of Michigan Pursuant to 28 U.S.C. § 1404(a)

As explained below, the Court regards the issues presented in this case as relatively close, although ultimately the Court believes that the law demands that Defendants' motion to dismiss be denied. Nonetheless, because the heart of the defenses proffered in Defendants' motion to dismiss—*res judicata* and judicial estoppel—appear to be fundamentally related to and grounded in the Michigan litigation, the Court *sua*

*sponte* raised the issue of the propriety of a venue transfer under 28 U.S.C. 1404(a). (D.E. 22.) In doing so, the Court invited the parties to tender their views on the subject.

Both parties have since strenuously objected to any venue transfer under Section 1404(a). (D.E. 24 (Defendants' objection); D.E. 26 (Plaintiff's objection).) Although the Court in its *sua sponte* suggestion concerning the possibility of transfer discussed a putative advantage of transfer—namely, that the Sixth Circuit would have the chance to itself explain the impact and effect of its prior decision and judgment—that advantage is not so compelling that the Court will transfer the case to the Eastern District of Michigan over the joint objection of both parties. It is not unlawful for this Court to attempt to assess the impact of the Sixth Circuit's judgment and opinion on this case, nor is such an endeavor (one court assessing the impact of a prior judgment within the context of a subsequent *res judicata* argument) particularly uncommon. Accordingly, the Court will proceed, consistent with the parties' filings, to pass upon the pending motion to dismiss.

  II. *Res Judicata* Does Not Apply Because The Prior Suit Was Dismissed For Lack of Subject Matter Jurisdiction

Plaintiff previously brought suit against Defendants alleging a cause of action under ERISA § 502(a)(3) in the Western District of Michigan. Although initially successful, the Sixth Circuit ultimately ordered the case dismissed "for lack of subject matter jurisdiction." *Crosby*, 382 F.3d at 597. Defendants now contend that, based on the Prior Suit, this matter should be dismissed as *res judicata*. (D.E. 11.)

Under the doctrine of *res judicata*, "'a valid and final judgment precludes a second suit between the same parties on the same claim or any part thereof.'" *Hamdan v. Gonzales*, 425 F.3d 1051, 1059 (7th Cir. 2005) (quoting *Medina v. I.N.S.*, 993 F.2d 499, 503 (5th Cir. 1993)). Caselaw instructs that "[w]hen a defendant raises *res judicata* as a

defense and it is clear from the complaint's face, and matters of which the district court may take judicial notice that the plaintiff's claims are barred as a matter of law, dismissal under Rule 12(b)(6) is proper." *Wilson v. Bob Watson Chevrolet, Inc.*, No. 03 C 5535, 2004 WL 432493, at *2 (N.D. Ill. Mar. 2, 2004) (Aspen, J.) (citing *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86-87 (2d Cir. 2000)); *accord, e.g., Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338 (7th Cir. 1995) (affirming dismissal pursuant to Rule 12(b)(6) on the grounds of *res judicata*). A plaintiff's second lawsuit is barred by *res judicata* when there is "(1) [a] judgment on the merits in an earlier action; (2) an identity of the parties or their privies in the two suits; and (3) an identity of the cause of action between both suits." *Id.* (collecting cases).

The parties agree that the Prior Suit involved the same parties as the case at bar. (D.E. 12 at 7; D.E. 14 at 6.) The parties disagree, however, as to whether the cause of action in the Prior Suit and the current suit are identical. (*Id.*) The Court need not reach this issue, however, because there was no judgment "on the merits" in the Prior Suit, which was dismissed for lack of jurisdiction; therefore, the doctrine of *res judicata* does not properly apply here. As the Seventh Circuit has pointedly stated, "[a] dismissal other than one on the merits merely precludes relitigation of the issues decided. A dismissal for lack of subject matter jurisdiction is not on the merits and consequently will not bar a later suit." *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1277 (7th Cir. 1983) (internal citations omitted; collecting extensive federal appellate authority); *accord, e.g., Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004) ("[C]ourts cannot decide any controversy over which they lack subject-matter jurisdiction"); *Madden v. Perry*, 264 F.2d 169, 174-175 (7th Cir. 1959) (refusing to apply *res judicata*

when the prior litigation at issue was dismissed for lack of jurisdiction); *Sachs v. Ohio Nat'l Life Ins. Co.*, 148 F.2d 128, 132 (7th Cir. 1945) ("We think no authority need be cited for the proposition that a ruling is not *res adjudicata* when made in a case subsequently dismissed for want of jurisdiction."). In addition, the Federal Rules of Civil Procedure explain that a dismissal for lack of jurisdiction is not a dismissal on the merits. *See* Fed. R. Civ. P. 41(b) (stating that, "any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction . . . operates as an adjudication on the merits").

Attempting to elide the rule that a dismissal for lack of jurisdiction is not a ruling "on the merits" sufficient to support a finding of *res judicata*, Defendants contend that "[a]lthough the Sixth Circuit stated that it dismissed Crosby's claim based on lack of jurisdiction, the dismissal is properly characterized as a ruling on the merits." (D.E. 12 at 8.) In support of this argument, Defendants cite Seventh Circuit case law holding that when a plaintiff fails to request equitable relief under ERISA § 502(a)(3), the proper course of action is dismissal for failure to state a claim rather than dismissal for a lack of jurisdiction. *See Healthcare Cost Controls v. Skinner*, 44 F.3d 535, 538 (7th Cir. 1995). Defendants therefore argue that "while the Sixth Circuit may have said it was dismissing Crosby's claim for lack of subject matter jurisdiction, the law of the Seventh Circuit, where Crosby has elected to revive his claim, holds otherwise." (D.E. 12 at 9.)

Defendants have presented a compelling argument that if Plaintiff had brought his Prior Suit in the Seventh Circuit, the outcome of the Prior Suit may have been different, in that the dismissal would have been for failure to state a claim and thus would have been a dismissal "on the merits" for the *res judicata* analysis. However, what Defendants have failed to do, with all respect, is to cite a single case indicating that, for *res judicata*

7

purposes, a district court may second-guess the holding of a circuit court of appeals to determine whether that holding would have been different had the case been decided by a different court, namely the court of appeals in the circuit in which the district court sits. Although the parties do not discuss the issue, it appears settled that "[j]udgments rendered by a federal court in a federal question case must be afforded the same preclusive effect as the rendering federal court would afford them." *Moore's Federal Practice*, Vol. 18 at 130-10.1, Section 130.02 (3d ed. 2006). And, in this regard, it appears clear (again, the parties do not address this issue) that the Sixth Circuit agrees with the Seventh, in that a dismissal for want of subject matter jurisdiction is not "on the merits" and therefore will not bar a later suit. *See, e.g.,* Wilkins v. Jakeway, 183 F.3d 528, 533 n.6 (6th Cir. 1999) (stating that a dismissal "for lack of subject matter jurisdiction does not operate as a dismissal on the merits") (citation omitted); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

As Defendants also note, the Sixth Circuit, in a decision subsequent to the issuance of the decision and dismissal for lack of subject matter jurisdiction in the Prior Suit, appears to have reversed its view that a dismissal for failure to advance a compensable ERISA claim under § 502(a)(3) should result in a dismissal for lack of subject matter jurisdiction. Thus, in *Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515 (6th Cir. 2006), the Sixth Circuit recently reversed its prior framing of such dismissals and held that a district court has subject matter jurisdiction over an action ostensibly brought under ERISA § 502(a)(3) solely for legal relief, "even if that action fails to state a claim upon which relief can be granted." *Id.*, 433 F.3d at 520-521. While this decision is certainly informative to district courts in the Sixth Circuit, it does nothing to change

8

the express dismissal of the Prior Suit for "lack of subject matter jurisdiction." *Crosby*, 382 F.3d at 597. Again, Defendants have cited no precedent teaching that a district court can, for *res judicata* purposes, second-guess a circuit court's dismissal of a claim for lack of subject matter jurisdiction—in a case decided more than two years ago—based on the fact that the case might be decided differently if brought before the same circuit court today. Such a holding would likely lead to another factor in the *res judicata* analysis, requiring courts making *res judicata* determinations to determine whether the outcome in the prior cases would have been different had those cases been brought in different jurisdictions, or even in the same jurisdiction at different times. Rather than conduct such an analysis, the Court assumes that the Sixth Circuit meant what it said when it ordered the Prior Suit dismissed for lack of subject matter jurisdiction.[3]

As Defendants note, there are cases in which reviewing courts have re-characterized dismissals for lack of jurisdiction. *See, e.g., Health Cost Controls*, 44 F.3d 535 (allowing amendment of complaint dismissed for lack of jurisdiction). These cases, however, were decided by appellate courts on direct review—courts whose very purpose is to review lower court decisions. Again, Defendants cite no authority which would give this district court the authority to revise or recharacterize the Sixth Circuit's prior judgment and opinion in the Prior Suit. Because the Prior Suit was expressly dismissed for lack of subject matter jurisdiction, it has no *res judicata* effect and the Defendants'

---

[3]   Because the Court is apprised of no precedent that would give it the authority to decide how the Sixth Circuit should have ruled in the Prior Case, or to recharacterize the Sixth Circuit's order on the basis of how the Sixth Circuit might rule if the matter were before it today, the cases Defendants cite in arguing that the Sixth Circuit was incorrect in its ruling are inapposite to the analysis here. This Court suggested that the case might be transferred to a district court in the Sixth Circuit, where such a review or recharacterization would be possible by the Sixth Circuit, and where such analysis might even be possible via interlocutory review under 28 U.S.C. § 1292(b). (D.E. 22 at 2-3.) Defendants opposed such a transfer, as did Plaintiff, and the Court has accepted that opposition.

motion to dismiss based on it is respectfully denied. *See, e.g., Bunker Ramo*, 713 F.2d at 1279 (affirming denial of motion to dismiss a claim as barred by *res judicata* when prior claim was dismissed for lack of subject matter jurisdiction).

      III.     Judicial Estoppel Does Not Apply Under The Circumstances Presented

Defendants argue that Plaintiff should be judicially estopped from claiming that he can pursue relief under ERISA § 502(a)(1)(B) because he argued vehemently in the Prior Suit that § 502(a)(1)(B) did not apply. (D.E. 12 at 10.) Plaintiff replies that he should not be estopped and that, if anyone, it is Defendants that should be judicially estopped, as they argued in the prior litigation that Crosby could not recover under ERISA § 502(a)(3) because his claim arose under § 502(a)(1)(B). (D.E. 14 at 12.) As explained below, Defendants' motion to judicially estop is respectfully rejected.

"[N]o precise or rigid formula guides the application of judicial estoppel." *See Jarrard v. CDI Telecomm., Inc.*, 408 F.3d 905, 914 (7th Cir. 2005). "[Judicial estoppel] is an equitable concept, and its application is therefore within the court's sound discretion." *In re Cassidy*, 892 F.2d 637, 642 (7th Cir.1990) (citation omitted); *accord, e.g., Jarrard*, 408 F.3d at 914 ("Judicial estoppel is an equitable doctrine to be applied flexibly with an eye toward protecting the integrity of the judicial process") (citation omitted).

Although the circumstances under which judicial estoppel may be invoked are "probably not reducible to any general formulation of principle," precedent instructs that several factors "typically inform the decision." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). First, the position a litigant in a subsequent litigation attempts to pursue must be "clearly inconsistent" with a position he asserted in prior litigation. *Id.* Second,

the party to be estopped must have "prevailed on the basis of its earlier position 'so that the judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.'" *Jarrard*, 408 F.3d at 914 (quoting *New Hampshire*, 532 U.S. at 750). Third, the Seventh Circuit has considered "whether the party seeking to assert an inconsistent position 'would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *Jarrard*, 408 F.3d at 914-915 (quoting *New Hampshire*, 532 U.S. at 751). "A fourth factor to consider is whether the operative facts remain the same in both cases." *Id.* (citing *Ogden Martin Sys. of Indianapolis v. Whiting Corp.*, 179 F.3d 523, 527 (7th Cir. 1999)). Precedent also often speaks of a need to assess whether judicial estoppel must be applied "to prevent the perversion of the judicial process." *In re Cassidy*, 892 F.2d at 641 (citation omitted); *accord Jarrard*, 408 F.3d at 915 (quoting *In re Cassidy*, 892 F.2d at 641)); *see also Jarrard*, 408 F.3d at 914 (directing courts to consider whether judicial estoppel should be applied to "protec[t] the integrity of the judicial process") (citing *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004)).

Although the question is likely subject to reasonable debate, the Court has considered the factors identified in precedent and respectfully declines to apply judicial estoppel to bar Plaintiff's suit. In this regard, the Court first considers whether judicial estoppel should be applied to "prevent a perversion of the judicial process" or "protect the integrity of the judicial process." After reviewing the circumstances of this case and the Prior Suit, it is difficult to say that judicial estoppel must be applied to prevent any perversion of the judicial process. As discussed above, the parties litigated in the Sixth Circuit, which ultimately dismissed the Prior Suit after finding that there was no subject

matter jurisdiction. *Crosby v. Bowater Inc. Retirement Plan for Salaried Employees of Great N. Paper, Inc.*, 382 F.3d 587, 597 (6th Cir. 2004). Allowing the parties to litigate here, in the wake of a federal appellate dismissal elsewhere for lack of subject matter jurisdiction, is hardly an affront to the sanctity of the civil justice system. As Defendants note, dismissal of the Plaintiff's Prior Suit for a lack of subject matter jurisdiction may not have been the outcome reached in the Seventh Circuit; but leaving the parties with the consequences of a federal appellate decision, as opposed to having a district court recharacterize that prior appellate decision, is hardly a "perversion" within a hierarchical system of federal courts. As explained earlier, this Court raised the possibility of transferring the case to a district court within the Sixth Circuit, such that the Sixth Circuit (perhaps even on interlocutory review under 28 U.S.C. § 1292(b)) could pass on the question of whether the litigation there and the Sixth Circuit's subsequent change of position concerning the appropriate nature of the dismissal of an ERISA case such as the Prior Suit would warrant the extraordinary step of taking the basis for the Sixth Circuit's dismissal of the Prior Suit (*i.e.*, for lack of subject matter jurisdiction) at something other than face value. *See Crosby*, 382 F.3d at 597 (instructing Michigan district court to "DISMISS Mr. Crosby's complaint for lack of subject matter jurisdiction."). Both Plaintiff and Defendants opposed such a transfer to a district court within the Sixth Circuit. The Court is loathe to exercise its discretion, in the arena of judicial estoppel, so as to in effect undermine the traditional consequence of a dismissal for lack of subject matter jurisdiction in the Seventh and Sixth Circuits. *See also Jarrard*, 408 F.3d at 914 (Seventh Circuit expressing its skepticism, without needing to definitively rule, about

whether judicial estoppel could even be based on a prior suit where there was no subject matter jurisdiction in the prior litigation).[4]

In addition, judicial estoppel seems inappropriate because Plaintiff never ultimately prevailed in the Prior Suit—whether on the basis of any representations about his ability to recover under ERISA Section 502(a)(1)(B) or otherwise. Precedent from the Seventh Circuit has consistently and repeatedly stressed the significance, for purposes of judicial estoppel analysis, of whether a litigant prevailed in a prior suit on the basis of a position directly inconsistent with its position in a subsequent suit. *See, e.g.*, *Urbania v. Central States, Southeast and Southwest Areas Pension Fund*, 421 F.3d 580, 589 (7th Cir. 2005) (stating that, for judicial estoppel to apply, "the party to be estopped must have prevailed upon the first court to adopt the position") (citation omitted); *Jarrard*, 408 F.3d at 914 ("[T]he doctrine aims to prevent a party that prevails in one suit on one ground from repudiating that same ground in another lawsuit.") (collecting cases); *Mungo v. Taylor*, 355 F.3d 969, 982 (7th Cir. 2004) ("[T]his is not a case where the doctrine of judicial estoppel must be invoked in order to prevent a litigant from prevailing twice on separate, mutually exclusive theories.") (collecting cases); *Ladd v. ITT Corp.*, 148 F.3d 753, 756 (7th Cir. 1998) (teaching, with regard to judicial estoppel,

---

[4] The Court further notes that the Sixth Circuit's reversal of its position in *Crosby v. Bowater Inc. Retirement Plan for Salaried Employees of Great N. Paper, Inc.*, 382 F.3d 587, 592 (6th Cir. 2004), and prior Sixth Circuit cases that the appropriate basis for the dismissal of the Prior Suit was one for lack of subject matter jurisdiction was based on the Sixth Circuit's assessment of what it described as "intervening Supreme Court precedent." *See Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515, 516 (6th Cir. 2006) (discussing recent Supreme Court cases). In *Primax*, the Sixth Circuit also quoted Second Circuit precedent which stated that "'[g]enerations of jurists have struggled with the difficulty of distinguishing between Rules 12(b)(1) and 12(b)(6) in federal question cases.'" *Id.*, 433 F.3d at 517 (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996)). Defendants have not persuaded the Court that the Sixth Circuit's express language in the Prior Suit, or its treatment of caselaw on which its decision in the Prior Suit rested, can appropriately be disregarded or ignored by this district court in the instant case.

that "if a party wins a suit on one ground, it can't turn around and in further litigation with the same opponent repudiate the ground in order to win a victory.") (collecting cases); *McNamara v. City of Chicago*, 138 F.3d 1219, 1225 (7th Cir. 1998) (teaching that judicial estoppel "provides that a party who prevails on one ground in a lawsuit cannot turn around and in another lawsuit repudiate the ground").

To be sure, on one (and seemingly only one) occasion, the Seventh Circuit has also explained that a scenario in which a litigant prevailed on a position in the district court, and that position was subsequently repudiated by the court of appeals, still potentially could ground a basis for the application of judicial estoppel. Thus, in *Carnegie v. Household, Int'l*, 376 F.3d 656, 660 (7th Cir. 2004), the Seventh Circuit discussed prior related proceedings to the case at issue, and it stated, "[i]t is true that we reversed the district court's approval of the [class action] settlement, but a reversal need not affect the application of judicial estoppel." *Id.* at 660.

Defendants naturally seize upon this language in arguing for application of judicial estoppel. (It is, in fact, their principal citation in their argument on this subject). Defendants argue that this Court may find Plaintiff judicially estopped from arguing that he may prevail under ERISA § 502(a)(1)(B) because, even though the Sixth Circuit ultimately overturned the decision, he received a favorable judgment from the Michigan district court that the applicable ERISA section was § 502(a)(3). (D.E. 12 at 12-13.) Defendants argue that the correct inquiry for judicial estoppel purposes is not, therefore, whether a party ultimately prevailed on an argument it now seeks to repudiate, but whether that party ever prevailed at all. (*Id.*)

14

Plaintiff disagrees with Defendants' interpretation of *Carnegie* and argues that *Carnegie* "teaches that judicial estoppel applies where the party to be estopped not only prevailed on the disputed issue in prior litigation, but <u>benefitted</u> from that ruling." (D.E. 14 at 13) (emphasis in original).) Not surprisingly, Plaintiff argues that he never benefitted from the Michigan district court's ruling, and therefore, that ruling cannot be used to judicially estop Plaintiff from arguing that he should prevail under ERISA § 502(a)(1)(B) in this case. In this regard, Defendants do not contend that Plaintiff benefitted from the Michigan district court's ruling prior to it having been overturned on appeal.

As an initial matter, while the Michigan district court decided to grant Plaintiff relief under ERISA § 503(a), it is not entirely clear that an opinion on whether Plaintiff could prevail under ERISA § 502(a)(1)(B) was essential to that decision. *Crosby*, 212 F.R.D. at 362-363. And, as previously mentioned, the Seventh Circuit has at least expressed skepticism about whether positions taken in prior litigation where subject matter jurisdiction was lacking ever could be the basis for a judicial estoppel. *See Jarrard*, 408 F.3d at 914.

Putting these issues aside, however, and assuming *arguendo* that Crosby prevailed in the Michigan district court under ERISA § 502(a)(3) based on his argument that he "could not bring his claim under ERISA §502(a)(1)(B)," the Court finds material to the equitable analysis that Plaintiff never benefitted from the decision of the district court in the Prior Suit. The Seventh Circuit in *Carnegie* stressed the fact that the parties to be estopped there "reaped a benefit" from the position they asserted in the prior litigation; thus, judicial estoppel was equitably applied because "they cannot now be

15

permitted to seek a further benefit from reversing their position." *Carnegie*, 376 F.3d at 660. Precedent stresses the importance of this "benefit" to the judicial estoppel analysis. The Supreme Court in *New Hampshire* similarly applied judicial estoppel to avoid a litigant from taking an inconsistent position in litigation after the same litigant had prevailed on the issue in prior litigation and benefitted from that decision. *New Hampshire*, 532 U.S. at 755. *New Hampshire* determined that allowing such a litigant to assert the inconsistent position would undermine the "integrity of the judicial process." *Id.* (applying judicial estoppel against New Hampshire, when "[h]aving convinced this Court to accept one interpretation of 'Middle of the River,' and having benefitted from that interpretation, New Hampshire now urges an inconsistent interpretation to gain an additional advantage at Maine's expense."). Defendants have alleged no manner in which Plaintiff benefitted from the Michigan district court's decision in the Prior Suit. Plaintiff asserts that neither he nor the purported class claimants ever "benefitted from the Michigan . . . [district court's] ruling," "as they never received a penny as a result of that ruling." (D.E. 14 at 13.) While Plaintiff potentially could still be subject to judicial estoppel had he received other benefits, such as settlement leverage or the enjoining of other litigation (which *Carnegie* found to be a benefit), Defendants have alleged no such collateral benefit in this situation and the Court can ascertain none.

Moreover, this is not a case where the doctrine of judicial estoppel "must be invoked in order to prevent a litigant from prevailing twice on separate, mutually exclusive theories." *Mungo*, 355 F.3d at 982; *see also id.* ("'Judicial estoppel serves to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories.'") (quoting *Ogden Martin*, 179 F.3d at 527). To the contrary,

Plaintiff ultimately lost in his claim that he could prevail under ERISA § 502(a)(3). *Crosby*, 382 F.3d 587. In its decision, the Sixth Circuit "intimate[d] no view" as to whether Crosby could recover under ERISA § 502(a)(1)(B). *Id.* at 591, n.5. Therefore, there is no risk that an opinion in this district on the issue would conflict with a prior court's non-reversed and extant decision. Normally, when a litigant has not been able to succeed on a position taken in prior litigation, the litigant is free to abandon that position in later cases. *See, e.g., In re Cassidy*, 892 F.2d at 641 ("A party is not bound to a position it unsuccessfully maintained").[5] In the Prior Suit, to the extent Plaintiff's representations about ERISA § 502(a)(1)(B) ever were part of the basis for his initially prevailing on his ERISA § 502(a)(3) claim, it is clear that the entire Prior Suit ultimately proved to be a losing endeavor for Plaintiff and the class he represented there.

In looking at all the circumstances presented, the Court respectfully declines Defendants' invitation to judicially estop Plaintiff from pursuing his ERISA claim here. Such estoppel is not required to prevent a perversion of the judicial process, and Plaintiff gained no apparent material benefit from any representations about ERISA § 502(a)(1)(B) in the Prior Suit. Moreover, while *Carnegie* teaches that judicial estoppel is not *per se* inapposite in a situation, as here, where there has been an appellate reversal of a district court in a prior suit, *Carnegie* did not suggest that the fact-specific, all-things-considered equitable assessment of the propriety of judicial estoppel was in any way displaced. Thus, where other factors, as identified herein, militate against application of judicial estoppel to Plaintiff's claim, and where Plaintiff ultimately did not prevail on

---

[5] *Accord, e.g., Patz v. St. Paul Fire & Marine Ins. Co.*, 15 F.3d 699, 702 (7th Cir. 1994) (stating that judicial estoppel is "about abandoning winning, not losing, grounds"); *Levinson v. United States*, 969 F.2d 260, 264-65 (7th Cir. 1992) (stating that, "the party to be [judicially] estopped must have convinced the first court to adopt its position; a litigant is not forever bound to a losing argument") (collecting cases).

anything in the Prior Suit, rejection of the putative judicial estoppel defense seems appropriate and warranted.

For all of these reasons, the Court respectfully denies Defendants' motion to dismiss on the basis that Plaintiff should be judicially estopped from arguing that he can prevail under ERISA § 502(a)(1)(B) in this case.[6]

IV. Bowater, Inc. Cannot Be Dismissed At The Motion-to-Dismiss Stage

Defendants move to dismiss Bowater, Inc.: Defendants assert that "[i]n cases like this one, where the Plan and the employer have distinct identities, the Plan is the only proper defendant to a claim for benefits." (D.E. 12 at 14.) While this assertion may well ultimately prove correct, as explained below, Seventh Circuit precedent allows ERISA benefits suits against the employer (as opposed to the Plan) in limited instances, and the question of whether this is one of the exceptional cases is a fact-bound inquiry not best resolved at the threshold motion-to-dismiss stage.

---

[6] Plaintiff argues in passing that "defendants are judicially estopped from arguing that Crosby may not seek relief under ERISA § 502(a)(1)(B)." (D.E. 14 at 12.) In support of this argument, Plaintiff cites various instances in the briefing in the Prior Suit, in which Defendants allegedly conceded that Plaintiff could seek relief under Section 502(a)(1)(B). This argument is unavailing for multiple, independent reasons. First, Plaintiff's reading of these statements in Defendants' briefing in the Prior Suit are generally overreaching: Defendants in the Prior Suit stated that *if* any relief were available, it would be available under Section 502(a)(1)(B)—which had not been pleaded. Defendants advanced this argument in the context of noting that Plaintiff had advanced no such claim (and that his suit therefore should be dismissed); Defendants did not concede that there was any winning Section 502(a)(1)(B) claim. (Even Plaintiff's briefing in the Prior Suit reflected the limited nature of Defendants' representations there. *See, e.g.*, D.E. 12, Ex. B (brief of Plaintiff from Prior Suit) at 24 (acknowledging that Defendants simply argued that Plaintiff's claim in the Prior Suit needed to be "pursued under ERISA § 502(a)(1)(B)," not that the claim was a winning one under that section).) As a result, the foundation for judicial estoppel does not exist as a matter of fact. *See, e.g., Mungo v. Taylor*, 355 F.3d 969, 981 (7th Cir. 2004) (finding judicial estoppel inapplicable where there was no clear inconsistency in positions). Furthermore, Defendants did not prevail on this argument in the Prior Suit—which is a second, independent, impediment to any judicial estoppel finding. And finally, as a matter of procedure, Plaintiff has not advanced any appropriate motion for a judicial estoppel-type judgment or ruling. Such a motion would have been unavailing, as explained above, but the Court would not grant such relief in the absence of a proper motion in any event.

In this regard, it is true that the Seventh Circuit generally limits an ERISA § 502(a)(1)(B) claim to a suit against the plan as an entity. *See, e.g., Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan*, 378 F.3d 669, 674 (7th Cir. 2004) ("[T]he complaint asserted only a § 502(a)(1)(B) claim for benefits, which generally is limited to a suit against the Plan, not an employer . . . ."). However, even though "in a suit for benefits, the plaintiff ordinarily 'should name the plan as a defendant,'" the Seventh Circuit has "allowed suits against the employer in its role as plan administrator." *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005) (collecting cases and affirming, *inter alia*, grant of summary judgment against employer in an ERISA action) (quoting *Mein v. Carus Corp.*, 241 F.3d 581, 584 (7th Cir. 2001)). Specifically, such suits have been allowed when an "employer was the plan administrator and the employer and the plan were otherwise closely intertwined." *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 872, n.4 (7th Cir. 2001) (citing *Mein*, 241 F.3d at 585). In *Mein*, for example, the Seventh Circuit allowed an ERISA § 502(a)(1)(B) suit to go forward against both a plan and an employer, finding that the employer and the plan were "closely intertwined" when the employer was the plan administrator, the plan documents referred to the employer and the plan interchangeably, the plan designated the employer as the agent for service of legal process, and the plan trustee, with whom the plaintiff most often communicated about his claim, at times used stationery indicating that he was vice-president of human resources for the corporation. *Mein*, 241 F.3d at 585.

In the case *sub judice*, the Parties agree that Defendant Bowater Inc. is the Plan administrator. (D.E. 1 ¶ 11 ("after the sale to Inexcon, Bowater continued to administer the plan"); D.E. 12 at 14 (asserting that Bowater, Inc. is "the Plan Sponsor and Administrator").) Whether Bowater and the Plan are sufficiently intertwined so as to fall

into the exceptionally "intertwined" category, or to fall into the garden-variety scenario, is not immediately apparent. The subject is a fact-specific one—*see Mein*, 241 F.3d at 585—that likely is not best resolved at the motion-to-dismiss stage, at least, as here, where there are potentially relevant factual questions that are not explored in detail in the briefs. For these reasons, the Court denies Defendants' motion to dismiss Bowater, Inc., without prejudice. Bowater, Inc., is free to raise such arguments in the context of summary judgment.

## CONCLUSION

For the reasons stated above, the motion to dismiss of Defendants (D.E. 11) is respectfully rejected.

So Ordered.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Dated: 9/1/06